In Re. Gesture Technology Partners, 2024-1585, Mr. Wittenzelder. Mr. Wittenzelder. May it please the Court. Thank you. Good morning. This is the second appeal concerning the 924 patent. The previous appeal, this Court affirmed the PTAB's decision that all the claims are not unpatentable in an IPR proceeding. Today, I'd like to focus on two issues. First, whether the Lieberman device is handheld, and second, whether the device in Lieberman has two cameras configured as claimed. On the first issue, Lieberman discloses two distinct classes of device. Figures 5A through 5C of Lieberman depict what it refers to as the installation. For the record, that is Appendix 1252. As depicted and also described in the specification, the installations are very clearly not handheld. They're a kiosk, set-top box, or computer implementation. The Board relied on figure 6, right? In part, Your Honor, and that's the issue that we see here, but that's a later limitation. I'm happy to jump to that one, if the Court would like. For handheld? Not for handheld, but that issue, the reliance on that installation comes up with the second issue that I was going to address today. I'm happy to jump there now or keep going on handheld. Okay. I was under the impression that the Board relied on the figure 6 version for the handheld. Is that wrong? The Board does, but the issue is that later on, when you get to Limitations 1E, which requires a second camera, the Board, in an anticipation argument or anticipation ground, relies on these separate installation embodiments that are distinctly disclosed and described in the specification for anticipation of a second camera, which is contrary to the law on anticipation. I might as well go there. The specification first describes those installation embodiments, Column 13. This is Appendix 1270 of Lieberman, Column 13, starting at line 4. It says, to allow the signing person free movement in his or her environment to track down spatial positions in that environment. In such a case, the installation should follow the following criteria, and then the remainder of that Column 13 is describing those distinct installation embodiments before the patent gets to the claims. When we go back to the installation embodiments, they are very clearly not handheld, and the law is very clear that for anticipation, every element of the claim invention must be arranged as in the claim, unless a person of ordinary skill in the art would at once envisage the combination. You can't simply combine multiple distinct teachings, which is the case we have here in Lieberman, where they are very clearly broken apart from each other. Figure 6 looks like it can be handheld. Sure, we'll get to that, but because we jumped to the issue of the two cameras, the anticipation ground is clearly contrary to the law because they are combining two distinct embodiments within Lieberman to get the second camera in a handheld device, and there's no finding that a person of ordinary skill in the art would envisage that combination upon viewing it. In addition, Lieberman is very clear in how it breaks apart those two embodiments. Returning to the issue of the device being handheld, there is some disagreement about the construction of the term handheld, but I think for the purposes of today, the Board's term handheld means small enough to be used while being held in the hand or hands. Lieberman, and as Your Honors pointed me to, the Board for the handheld issue relied on the cellular telephone embodiment of Lieberman, which is figure 6. Lieberman's cellular telephone is not a handheld device because it cannot be used while being held in the hand or hands for several reasons. Again, this is a device for the deaf or hard of hearing. Isn't a cellular telephone at least comprehend the notion of a phone that can be held in the hand? I think generally. As the term is used conventionally. And that's 6, figure 6 actually calls it out as a cellular telephone device. Colloquially, sure, Your Honor. I think we do have to keep in mind, however, that this is a divergence from what a standard cell phone would be either today or at the time. I certainly agree with that. But there are reasons that even though it's described as a cellular telephone, it is not shaped of the size to be used in your hand. How do you know that, though? It seems to me that what the Board found was that it is capable of being held in the hand. And why do you say conclusively that it's not? There are several reasons. I'm talking about figure 6, of course. Sure. So there are several reasons. I think, one, the Board's decision rested in part on an assumption of dimensions from the figure itself, which is contrary to the law. What we can take away from figure 6 is that it has a flat. I'm not sure that that's right as a matter of law, that you can't draw any conclusions about shape or size from figures. The law says, as I understand it, that you can't construe a claim as bound by the parameters set out in a figure, because the drawings can be a little loose. But here, for example, one thing that struck me, and it's argued, is that the pad, the number pad on figure 6 is a conventional-looking number pad. Typically, they will be in an area that's the size appropriate for using the fingers the way one would in an old-fashioned adding machine. If that's true, then this device seems to depict something that would be about the size that could be held in the hand. Why isn't that a sensible way to read this? I think it's a fair assumption, sort of in a vacuum, but we also have to keep in mind that we have a device that has a fairly large screen on it to be able to have sign language come back to the deaf or hard-of-hearing user. So that does alter the dimensions from something that we would consider. I agree that the numbers would not be sized spaced very far apart, because then it just becomes more. Sotomayor We've had cell phones with screens on them. I'm not sure that that tells us that this can't be held in the hand. The fact that there's a screen doesn't tell us that it can't be held in the hand. It's not the dispositive item on this figure. I think what's maybe more instructive on this figure is simply the configuration of the base of the device relative to the camera. There's a large discussion both on the record below as well as in briefing about there being a stable base for this. The reason being that sign language typically takes two hands. So this device needs to be able to be used during signing. Getting back to cameras again, you said leave them undisclosed as one camera. Actually in column 13, it points out that there can be more than one camera covering a separate angle, operating independently, and avoiding overlap. Yes, Your Honor, but then at column 13, line 9, it states that in such a case where there would be multiple cameras, it would be the installation. The installation is how the Lieberman reference refers to the embodiments in figures 5A through 5C, which are, again, a set-top box, a kiosk, or a computer, which are not handheld. Returning back to figure 6, the configuration between the base and the camera are important and really point to why this device cannot be used in the hand. If we look at a regular phone, this device is configured to be used in the hand. The camera faces the user. It is parallel to the back of the device. You hold it like this and use it. When we look at Lieberman, the configuration is different. Camera 10 is perpendicular to the base. That's because, like a laptop, it is designed to be used and is used when sitting on a table so that the user can have both hands free to use it. This device, my laptop, and, as a result, the device in Lieberman, cannot be used in the hand. If I were to do that here, I'm now taking pictures of my feet and I can't sign with them. One of the grounds for rejection is obviousness as well as anticipation. Correct, Your Honor. So the reference doesn't have to be precisely on point. Correct, Your Honor. Our position is that neither ground is correct. Anticipation, surely, because you are not permitted, given the distinct disclosure of embodiments, to reach between the embodiments. One argument that's made by the appellee here is that with respect to the argument as to the embodiment, the different embodiments, that you didn't make that argument before the board and that you've therefore waived it. What do you say to that? I think we addressed this in our reply on the actual screenshot of the argument itself. My apologies. You can come back to it if you like. Thank you, Your Honor. But there was a series of similar claims in the response brief, and I'll have the pages in my rebuttal. But they were addressed and we pointed the court to each of those instances where there was a supposed waiver, but we actually expressly had the language from the record below where we presented these arguments. But as to the obviousness issue, I think one of the overlying issues with the opinion is that it seemed to just go from anticipation and rubber stamp a bit the obviousness finding simply that because the embodiments were in the reference that it was inherent. Inherent is probably the wrong word, but that it was obvious because there were these two distinct embodiments in Lieberman, but there's simply no analysis or finding as to why a person of ordinary skill in the art would make that jump to combine the two distinct references. I think that's in particular... Counselor, you're into your rebuttal time. I assume you want to save it. You can continue if you like. Thank you, Your Honor. I can just finish my thought. I think it's particularly important to keep in mind the timeframe of this where it wouldn't necessarily have been obvious to take what was an installation configuration, a large device, and somehow just obviously shrink this down into the small handheld device. That's all I have, and I'll save the rest of my time unless Your Honors have any further questions for me. We will save it for you. Thank you. Mr. Bova. Good morning, Your Honors, and may it please the Court. Justin Bova for the Director of the USPTO. I heard counsel only discuss three of the issues that they raised in their briefing, so I'll address those and rest on the briefing for the rest of it. With respect first to the installation argument, as we pointed out in our brief at page 39, that argument was not made below with respect to what an installation is, and so that is forfeited. Well, they say that they responded to that in their reply, which I don't have the page. I know that there was something in the reply that I don't have the particular page. Do you have anything to say about what they say in the reply? I don't actually think on that particular issue that that was raised below on the installation portion. I think there was nothing in the reply about installation. I had thought there was, but I may have been mixed up with another issue, because there were several points that you raised waiver and they responded to some of them at least. I had thought that was one of them, but I maybe don't. So I don't want to use up your time. It's okay, Your Honor. It may not be there. I don't think it was for this particular issue, but even so, on the merits in Lieberman at column 13, at appendix 1269 or 1270, as gesture read from that column, lines 4, the illustrated embodiments all utilize single video cameras. That's discussing all of the embodiments in the patent in this reference. So you're reading illustrated embodiments as including all embodiments in the patent, not simply those being discussed at that point in the patent? All of the embodiments that are discussed, which includes figure 6, which is that cellular telephone version in Lieberman. So the illustrated embodiments all utilize a single video camera, just like figure 6 does, and then it goes on to say it may be desirable to include a second camera. Now this discussion of on line 9, in such case the installation should follow, that was not made below, so that there's no finding about what this reference means from the board, but a fair reading of that also is that the installation of a second camera should follow these parameters. Well, is the term installation used at any other point in the specification? Yes, it is, Your Honor. In describing in the brief description of the drawings, right? In the brief description of the drawings, when it talks about figures 5, yes. The figure 5 embodiments, they're described as installations. That's right, Your Honor. And then the brief description of the drawings, figure 6, doesn't reference that embodiment as being an installation. That's right, Your Honor, yes. I guess the argument they're trying to make is that raises an inference here that when it says installation at column 13, it's referencing previously mentioned installations, which would only be the figure 5 illustrations and not figure 6. I don't, that is a possibility that it was being that precise for that term, but I think a fair reading in the context of this is preceding that statement, it says the illustrated embodiments all utilize. It would make little sense that it would say, well, we're not talking about the figure 6 embodiment when we're talking about including a second camera. So the installation, I think a fair reading of that actually is the process of installing the second camera. There is, as Judge Lori pointed out, also an obviousness ground for including a second camera that the examiner found and the board affirmed. Are there any other usages of the term installation other than the two we just discussed? I believe it's discussed only in the context of this column 13 and for figure 5. It's not used often and it's not used, I don't think, as precisely as gesture would have it. It's used here, again, I think a fair reading is to include it as a reason for, or how to install the camera itself, the second camera itself. Going back to the basic point that was raised by your opposing counsel, that you can't take something from one embodiment in a patent and combine it with something in another embodiment in a patent for purposes of anticipation. What do you say to that proposition? No. Let's assume it's not. Let's assume it's limited. But can you borrow elements from different embodiments for purposes of anticipation in a prior? No, you would not be combining them for anticipation. Obviousness would be the fallback at that point. Single reference obviousness. Sears, as a secondary reference, also teaches multiple cameras. The board and the examiner relied on Lieberman, this reference, as obvious to include a second camera with the rationale that they provided of making it more desirable and more useful for a user. I also heard Gesture argue about handheld, and I didn't hear them argue for their claim construction, so assuming that the board's construction is correct, that handheld means is a size requirement that the device is small enough to be used while being held in the hand or hands, which is consistent with what Gesture argued below in their briefing. Lieberman's device, as Your Honors recognize, there's nothing to, or as Gesture acknowledged, a fair assumption that this device in Lieberman is handheld. Based also on the size of the keypad, that it gives you context. The board didn't rely on Figure 6 to say, these are specific dimensions and specific measurements that show this is handheld. They showed Figure 6, called the cellular telephone version, and said that this too is capable of being held while being used. There's also no requirement that it be held while being used. That's only under their construction. Is there anything in the record that would suggest that in 1999 the term cellular telephone was understood to mean handheld device? There's nothing in the record beyond Lieberman itself here. That's what the board relied on. The board said, well, the prior art also shows a cellular telephone device that is in Lieberman that is a handheld device, just like any other device. What reference is that? Lieberman. Where in Lieberman do you say? Oh, Figure 6, cellular telephone. So you're going back to Figure 6. So Figure 6 says this is a cellular telephone type device, but what it doesn't say, unless we assume already the conclusion that Figure 6 shows a handheld device, it doesn't say that cellular telephones are necessarily handheld. That's what I'm looking for. Is there anything anywhere in the record that would suggest that that was an understanding of the meaning of cellular telephone at the time? There's no general teaching that cell phone is something that was handheld, although I don't know that since the invention of the cell phone there has been a cell phone that is not handheld. I was going to say, I certainly am, I was aware of the very early versions of cell phones, which were cumbersome, but still handheld. That's exactly right, Your Honor. I guess there's nothing in the record of an example of a cellular telephone that is some monstrously large object that cannot be held in one hand. That's exactly right, Your Honor. Yeah, there's no evidence that it cannot, of a cell phone that cannot be held in the hand. There is evidence in Lieberman itself, again, at Column 5, that talks about its portability and transportability and able to move through the wireless network. This is at Appendix 1266, Column 5, onto Column 6, so that it can be transported, may be transported and communicate as a wireless remote, which gives further context that this is something that is in fact handheld. But portable doesn't get you there, right? Because a laptop is portable, but you wouldn't call it handheld. Even though you could hold it in two hands easily and in one hand with some difficulty. Yes, a lot of things in a vacuum, maybe, but in the context of cellular telephone version in Figure 6, discussed as transported and can communicate as a wireless remote, all of this suggests that this is a smaller device than something as a laptop that would be used, or that could be portable and yet not necessarily handheld. I did hear a little bit of discussion about the obviousness issue, and there was commentary that there's no findings about why one would substitute the on-board processor into Lieberman, but there were findings that the examiner made. For example, at Appendix 1266, at Appendix 1266, 950 to 952, the examiner found that this would be a, these are known equivalents, well-known equivalents in the art, for on-board and off-board processors that you could substitute the one that's disclosed in Sears onto the one in Lieberman with predictable results. In part, the examiner relied on the about declaration that was part of the ex-parte 3 exam request, and that declaration itself was never contested or challenged, so there is substantial evidence to support the board's finding that this is a simple substitution of art-known equivalents with predictable results. Unless your honors have any other questions. Are there any other re-exams or IPRs that just drew patents lurking in the PTO, or are we at the end? There's one after this argument. You're very honest, thank you. I don't know of any others, Your Honor. Maybe Mr. Zellner knows. He did also discuss the previous decision about this particular patent, and that was decided earlier this year, June 5th, 2025, at 2025 Westlaw 158-4286. And Mr. Gesture argued that this court affirmed the board's finding that it was not unpatentable, but actually what this court did was affirm the board's finding that Apple failed to show a prior art reference that's not at issue here was non-analogous art, or was analogous art. So there was a failure of proof at the analogous art stage. The board did not affirm unpatentability on the merits. Thank you, Mr. Zellner. Mr. Zellner has a little rebuttal time. Thank you. I'd like to address two points that my counterpart raised. Did you find anything in the reply brief, by the way? We had some. I believe it's pages 14 through 15 of the reply brief, but I'll double check that. A1117 to 1118. Is that right? Oh, I thought the question was whether this argument was raised below in front of the board. This question about installation, what does that mean? Did you argue that issue before the board? No, I don't think the term installation itself came up, but I believe we argued about the fact that there are no embodiments of two cameras within the handheld embodiment. I don't know if we use the term installation itself. Limits of trying to search. But quickly, to respond to my counterpart's discussion of the term installation, I think the specification in Lieberman is very clear. The installation embodiments are something you would install somewhere. They are fixed. They don't move. Unlike figure six, which is the cellular telephone embodiment, which is portable. It is not installed somewhere. It is carried with you so that you can use it in different locations. The other point is my counterpart raised the issue with respect to moving processors from a distributed architecture into one device. I did not raise that in my argument. What I was referring to is the fact that the opinion from the board does not contain any reasoning for why a person of ordinary skill in the art in this single reference, obviousness, rejection, would look and combine, take the two cameras from these large installation embodiments and then move that into the single camera embodiment in figure six.